The Honorable James P. Donohue

10-MJ-00135-CMP

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

MAR 29 2010

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MARK E. PHILLIPS,

    Defendant.

CASE NO. MJ10-135

COMPLAINT for VIOLATION

Title 18, United States Code, Sections 1343 and 2

BEFORE the Honorable James P. Donohue, United States Magistrate Judge, Seattle, Washington.

**COUNTS 1-2**
**(Wire Fraud)**

**A.   Introduction**

1.   MOD Systems Incorporated ("MOD") is a Seattle-based, Washington Corporation which was incorporated on April 6, 2005. MOD is a start-up company engaged in the business of developing music and video downloading technology for retail kiosks.

2.   MARK E. PHILLIPS is a co-founder of MOD and served as a director and Chief Executive Officer ("CEO") of MOD from its founding until on or about March 27, 2009. On March 27, 2009, MARK E. PHILLIPS, entered into a Transition Agreement with MOD, whereby MARK E. PHILLIPS resigned from MOD's Board of Directors, resigned as CEO, and agreed to place all of his 18,901,196 shares of MOD common stock into a Voting Trust. The Voting Trust was created and is governed by the terms of the

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Voting Trust Agreement, entered into between MARK E. PHILLIPS and MOD. Under the terms of the Voting Trust Agreement, MARK E. PHILLIPS, among other things, relinquished all voting rights to his 18,901,196 shares of MOD common stock and transferred such voting authority to the Voting Trust Trustee, K.C., a former MOD Board member.

3. J.W. is an Arizona resident, and MARK E. PHILLIPS's former girlfriend. J.W. is a founder of Wallace-Black, LLC ("Wallace-Black"), which maintains a Bank of America bank account (****2393) in Phoenix, Arizona.

**B.  The Scheme and Artifice to Defraud**

4. Beginning at a time unknown, but at least by January 2008, and continuing until in or about March 2010, in Seattle and elsewhere, within the Western District of Washington, the defendant, MARK E. PHILLIPS, with others known and unknown, did devise a scheme and artifice to defraud MOD and its investors and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to execute and attempt to execute such scheme and artifice, by means of wire communications in interstate and foreign commerce.

5. The essence of the scheme and artifice to defraud was that MARK E. PHILLIPS used MOD's corporate assets and funds for his own personal benefit by (a) submitting, or causing to be submitted, false documents invoicing MOD for supposed services provided by Wallace-Black, causing MOD to wire its corporate funds to a Seattle law firm (the "Law Firm") to pay these falsely invoiced amounts, causing the Law Firm to wire the corporate funds to Wallace-Black's bank account, which was controlled by MARK E. PHILLIPS's then-girlfriend, J.W., and then instructing J.W. to transfer the funds for MARK E. PHILLIPS's personal benefit either to his bank account, to a watch company to purchase a $30,000 Breguet Watch, or to a start-up company in Washington as a personal investment for MARK E. PHILLIPS; and (b) attempting to seize control of MOD's bank account by falsely representing to Wells Fargo bank that he was MOD's controlling majority shareholder, had re-joined MOD's Board of Directors as the acting

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 2

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1 | Chairman of the Board, and as MOD's Chief Technology Officer ("CTO") and its sole
2 | officer, had the authority to take control of MOD's Wells Fargo bank account.
3 |       6.     It was a further part of the scheme and artifice to defraud that between
4 | January 2008 and May 2008, MARK E. PHILLIPS, created, or caused to be created,
5 | documents which falsely reflected that Wallace-Black had provided consulting services
6 | for which MOD was responsible for paying.
7 |       7.     It was a further part of the scheme and artifice to defraud that MARK E.
8 | PHILLIPS, caused MOD to use at least $70,000 of its corporate funds to pay these falsely
9 | invoiced amounts. In order to conceal the fact that these funds were ultimately to be used
10 | for his benefit, MARK E. PHILLIPS caused MOD to wire transfer the funds to the trust
11 | account of the Law Firm. MARK E. PHILLIPS then directed the Law Firm to wire
12 | transfer the funds to Wallace-Black's Arizona bank account. MARK E. PHILLIPS then
13 | directed J.W. to wire transfer the funds from the Wallace-Black's bank account to pay for
14 | personal items, such as a Breguet watch, or to otherwise inure to his own personal benefit.
15 |
16 |       8.     It was a further part of the scheme and artifice to defraud that between
17 | December 2009 and the present, MARK E. PHILLIPS fraudulently attempted to seize
18 | control of MOD's bank account at Wells Fargo bank by presenting documents to Wells
19 | Fargo which falsely stated that MARK E. PHILLIPS was the controlling majority
20 | shareholder of MOD, that he had rejoined the Board of Directors as its temporary
21 | Chairman, and that the Board of Directors had adopted a resolution authorizing MARK E.
22 | PHILLIPS to become a signer on MOD's Wells Fargo bank account and to otherwise
23 | control all banking activity on that account. Thereafter, MARK E. PHILLIPS sent an
24 | e-mail to Wells Fargo Bank attempting to seize control of the MOD bank account.
25 | **C.**    **Execution of the Scheme and Artifice to Defraud**
26 |       9.     On or about the dates set forth below, in Seattle and elsewhere, within the
27 | Western District of Washington, MARK E. PHILLIPS, for the purpose of executing this
28 | scheme and artifice, did knowingly cause to be transmitted by wire communication in

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 3

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

interstate and foreign commerce writings, signs, signals, pictures, and sounds, each transmission of which constitutes a separate count of this Complaint.

| Count | Date | Sender | Recipient | Wire Transmission |
|---|---|---|---|---|
| 1 | 03/10/08 | The Law Firm, Seattle, Washington | Bank of America account of Wallace-Black, Phoenix, Arizona | $60,000.00 wire transfer |
| 2 | 05/16/08 | The Law Firm, Seattle, Washington | Bank of America account of Wallace-Black, Phoenix, Arizona | $10,000.00 wire transfer |

All in violation of Title 18, United States Code, Sections 1343 and 2.

The undersigned complainant, being duly sworn, states:

1. I, Spencer B. Walker, have been a Special Agent of the FBI for just over one year. Prior to joining the FBI, I was employed by Deloitte & Touche as an external auditor and consultant for approximately four years. As a Special Agent with the FBI, I am responsible for investigating violations of federal criminal statutes over which the FBI has investigative jurisdiction, including titles and sections regarding wire fraud and mail fraud.

2. The information set forth in this criminal complaint is based on my own personal knowledge, training, and experience, interviews with witnesses, review of documents I collected or was provided that are relevant to the investigation, information that I gathered and observed first hand through the course of this investigation, as well as information communicated to me by and through law enforcement personnel. The information set forth below is not intended to detail each and every fact and circumstance of the investigation or all of the information known to me or the investigative participants. Rather, this affidavit serves solely to establish that there is probable cause to believe that MARK E. PHILLIPS committed the crime of Wire Fraud, in violation of Title 18, United States Code, Section 1343 and Section 2.

///

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

## DETAILS OF INVESTIGATION

3.      I have learned based on a review of Washington Secretary of State's corporate records database that MOD is a Seattle-based, Washington Corporation which was incorporated on April 6, 2005. According to its website, MOD is a start-up company that provides sophisticated software solutions and interactive touch-screen kiosks that allow users to quickly and easily search a virtual catalog of millions of digital assets, sample, and buy content in a format that's portable and multi-device compatible.

4.      I have also learned from MOD's General Counsel, D.D., that MARK E. PHILLIPS was a co-founder of MOD and served as a director of MOD and as the Chief Executive Officer of MOD from its founding until on or about March 27, 2009.

5.      On March 16, 2010, an attorney representing MOD contacted the United States Attorney's Office in Seattle to report possible criminal activity by MARK E. PHILLIPS. On or about that date, I began an investigation of the matter on behalf of the FBI.

6.      On March 18, 2010, I met with attorneys representing MOD from Fenwick & West, LLP ("Fenwick & West"), MOD's General Counsel, and an attorney representing R.A., a MOD shareholder. The attorneys advised me that MOD, R.A., and MARK E. PHILLIPS have been involved in litigation since approximately February 2009. R.A. currently has a lawsuit pending against MARK E. PHILLIPS in King County Superior Court. MARK E. PHILLIPS also sued MOD in King County Superior Court. MOD counter-sued MARK E. PHILLIPS. A subset of the issues in the PHILLIPS-MOD litigation will be resolved in an arbitration between MOD and MARK E. PHILLIPS. During our meeting the attorneys for MOD and R.A. advised me of the following:

   a.      In or about December 2008, MOD shareholder R.A. made a written demand on MOD and its Board of Directors in the form of a draft, unfiled Complaint for damages. The draft Complaint, alleged, among other things, that MARK E. PHILLIPS, and others, had misappropriated MOD funds to their own personal benefit.

   b.      In response to the allegations, MOD created a Demand Review

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Committee ("DRC") comprised of A.B. (MOD's current CEO and Chairman of the Board) and K.C. (a then MOD Board member) to investigate R.A.'s allegations. The DRC retained counsel and a forensic accountant to assist it in its investigation.

   c. As part of its investigation, between February and April, 2009, the DRC, through its lawyers and accountant, interviewed multiple witnesses and reviewed numerous documents, including financial records, related to the allegations in R.A.'s draft Complaint.

   d. On or about April 3, 2009, the DRC issued a preliminary report, and then a final report on June 16, 2009, explaining its findings. MOD provided me with that report, and I have reviewed it. The DRC's report concludes that MARK E. PHILLIPS misappropriated MOD corporate funds to purchase items for his personal benefit or to otherwise benefit himself personally. Specifically, the report contained the following findings:

     i. MARK E. PHILLIPS "misappropriated $100,000 of MOD funds by funneling them through [the Law Firm], to [J.W.], who in turn paid it to Mr. Phillips as he directed."

     ii. "There is evidence that Mr. Phillips has incurred as much as $524,000 in personal or non-business related expenses that have been paid by MOD." The report identified the following personal expenses:

      (1) Probable Personal Expenses – $268,252. This amount includes . . . $40,000 for travel and entertainment with no supporting documentation, $8,000 in Salvador Dali lithographs, $13,159 in purchases at Hermes and Louis Vuitton, $13,780 in personal airfare, $9,469 in furniture and other items purchased at a Tokyo department store, $9,200 in purchases at the Limm furniture store, $8,130 in clothing, $6,150 in dental and DNA testing expenses[.]

      (2) Potential Personal Expenses – $90,810. These are expenses that may have been personal . . . including almost $53,600 in electronics items purchased from Sony at Magnolia Audio.

      (3) Questionable Business Expenses – $108,650

      (4) Expenses with No Supporting Documentation – $42,708

      (5) [J.W.]-Related Expenses – $14,279

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

## FALSE INVOICES

7.    During our meeting on March 18, 2010, the attorneys for MOD provided me with a binder of documents supporting the DRC's finding that MARK E. PHILLIPS had used false documents invoicing Wallace-Black services to misappropriate MOD's corporate funds. I have reviewed those documents and summarize them below:

    a.    In an e-mail dated January 16, 2008, MARK E. PHILLIPS wrote to J.W.: "I received the watch, it's beautiful. I am crying. If possible could I pay you for this so I can pay out of a company for consulting work?"

### March 4, 2008 Letter Invoicing $60,000 of Wallace-Black Services

    b.    In an e-mail dated March 3, 2008, I.S., who is the creator of Feel Good Watches according to its website, wrote to MARK E. PHILLIPS at his MOD corporate e-mail account ("Subject: Breguet"):

> Dear Mark. I called and left you a voice message this morning. Can you please let me know when payment for this watch will be made? I would appreciate it. Also, it would greatly simplift matters, if you can overnight a a check or execute a wire transfer for the full amount. Barring this, please return the watch.

Shortly thereafter, on March 3, 2008, MARK E. PHILLIPS, responded in an e-mail from his MOD corporate e-mail account (with a copy to J.W.). The e-mail states:

> I am very sorry for this slip. I understand your concern and disappointment I will initiate the wire today, when I receive the confirmation I will send it along I would ask that I transfer 20k for the month of Feb and March.

    c.    On March 4, 2008, MARK E. PHILLIPS sent an e-mail to J.W., his then girlfriend ("Subject: wiring to Ira"), which stated: "I am wiring to you again, would you wire to Ira?" J.W. responded to MARK E. PHILLIPS by e-mail: "Just saw it will do." Shortly thereafter, MARK E. PHILLIPS responded to J.W. by e-mail: "Please call him and tell him that you are waiting for the funds. It will be more than 20k but that's all to send to him."

    d.    MOD's records contain a letter dated March 4, 2008, from the Law Firm to MARK E. PHILLIPS. The letter purports to invoice consulting services provided

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

by "W. Black LLC" for $60,000.00, and contains wiring instructions for payment to the Law Firm's Washington Mutual Bank account (****3481).

   e. A WaMu Customer Wire Transfer Application, dated March 3, 2008, authorizes a transfer of $60,000.00 to the Law Firm's bank account (****3481) from MOD's Washington Mutual bank account (****5086).

   f. On March 7, 2008, MARK E. PHILLIPS sent an e-mail to a named partner at the Law Firm with a copy to J.W. ("Subject: Wallace Black - today"), providing wiring account information to Wallace-Black's Bank of America account. The instructions direct the wire to be transferred to Wallace-Black's Bank of America account (****2393), with an address in Phoenix, Arizona.

   g. An excerpt of a statement for Wallace-Black's Bank of America account (****2393) for the period between March 1, 2008, through March 31, 2008, shows an incoming wire from the Law Firm in the amount of $60,000.00 on March 10, 2008, and an outgoing wire the next day on March 11, 2008, to Feel Good Watches in the amount of $20,000.00.

   h. On April 6, 2008, MARK E. PHILLIPS, using his MOD corporate e-mail account, wrote an e-mail to J.W. ("Subject: Wiring Information"): "Would you wire the money to this attached account?" An attachment to the e-mail contains incoming wire instructions for MARK E. PHILLIPS's Citigroup Global Market Account (****6900).

   i. An excerpt of a statement for Wallace-Black's Bank of America account (****2393) for the period between April 1, 2008, through April 30, 2008, shows outgoing wires on April 7, 2008 in the amount of $25,000.00 to Wilson Sonsini Goodrich & Rosati for the benefit of "Smapa" Corporation and on April 8, 2008, in the amount of $15,000.00 to MARK E. PHILLIPS's Citigroup Global Market Account (****6900). (I believe that the reference to "Smapa" is a typographical error, and that the wire was intended for the benefit of "Sampa," because, as explained below, during an interview with J.W., she explained that MARK E. PHILLIPS wanted to make an investment in

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Sampa Corporation.).

**May 15, 2008 Letter Invoicing $10,000 of Wallace-Black Services**

j.      On April 29, 2008, A.D.-G., using an e-mail account with the domain "feelgoodwatches.com," wrote an e-mail to MARK E. PHILLIPS, ("Subject RE: Payment"): "Dear Mark, Please can you send payment for the Breguet. I have attached our wire information." MARK E. PHILLIPS responded the same day by e-mail to A.D.-G.: "My sincere apologies. How much is owed and I will be working with Jan to do this." Later that evening, A.D.-G. responded to MARK E. PHILLIPS by e-mail, writing: "The total is $10,000 I have attached our wire information as this would reduce time." Shortly afterwards, MARK E. PHILLIPS forwarded the above-described e-mail correspondence to J.W., and wrote: "I think I need to wire you more money . . ."

k.      MOD's records contain a letter dated May 15, 2008, from the Law Firm to MARK E. PHILLIPS. The letter purports to invoice consulting services provided by "W. Black LLC" for $10,000.00, and contains wiring instructions for payment to the Law Firm's Washington Mutual Bank account (****3481).

l.      A WaMu Customer Wire Transfer Application, dated March 3, 2008, authorizes a transfer of $10,000.00 to the Law Firm's bank account (****3481) from a MOD Washington Mutual bank account (****5086). (I believe that the date on the application is erroneous because, as explained below, J.W. received $10,000.00 from the Law Firm in Wallace-Black's Bank of America account (****2393) on May 16, 2008.).

m.      An excerpt of a statement for Wallace-Black's Bank of America account (****2393) for the period between May 1, 2008, through May 31, 2008, shows an incoming wire from the Law Firm in the amount of $10,000.00 on May 16, 2008, and an outgoing wire the next day on May 16, 2008, to Feel Good Watches in the amount of $10,000.00.

8.      I have spoken on several occasions with D.D., MOD's General Counsel, and he has advised me of the following.

a.      MOD has never authorized any payment to Wallace-Black.

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 9

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

  b. MOD has never authorized any investment in Sampa Corporation or authorized MARK E. PHILLIPS to use MOD corporate funds to purchase watches for his own personal use.

 9. On March 25, 2010, I interviewed J.W., under a grant of limited immunity in the form of a standard Proffer Letter from the United States Attorney's Office. J.W. provided the following information:

  a. J.W. was romantically involved with MARK E. PHILLIPS from the spring of 2007 through July 2008.

  b. J.W. was a founder of Wallace-Black. J.W. maintained and had control over a Bank of America bank account (****2393) in the name of Wallace-Black, LLC, which account was in Arizona.

  c. J.W. had given MARK E. PHILLIPS a Breguet watch in December 2007, and MARK E. PHILLIPS expressed a desire to obtain similar watches. J.W. knew an individual, I.S., who could provide Breguet watches at a wholesale price. According to its website, I.S. is creator of Feel Good Watches, an Arizona-based company that sells expensive watches at wholesale prices.

  d. In January 2008, MARK E. PHILLIPS told J.W. that he was interested in obtaining two different Breguet watches, and asked J.W. about acquiring those watches from I.S. The first watch MARK E. PHILLIPS wanted was a Pink-Gold Breguet and the second was a Perpetual Calendar Breguet watch. J.W. contacted I.S. about obtaining the watches. I.S., based on his relationship with J.W., agreed to send both watches to MARK E. PHILLIPS in advance of payment. The total cost of the two watches was $60,000.00.

  e. J.W. stated that MARK E. PHILLIPS received the first Pink-Gold Breguet watch in approximately mid-January 2008.

  f. J.W. negotiated payment terms with I.S. on behalf of MARK E. PHILLIPS, which would allow MARK E. PHILLIPS to pay for the second Perpetual Calendar Breguet watch in two installments of $20,000.00 and $10,000.00 over a two-

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 10

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

month period of time.

g. On multiple occasions in 2008, Wallace-Black received wire transfers from the Law Firm. MARK E. PHILLIPS contacted J.W. by e-mail or by telephone just prior to transfer of the funds to Wallace-Black and directed J.W. to wire the funds sent from the Law Firm to Feel Good Watches or other third party accounts at MARK E. PHILLIPS's direction.

h. J.W. reviewed the documents discussed above in Paragraph 7.

i. J.W. confirmed reading and receiving the e-mails between her and MARK E. PHILLIPS described in Paragraph 7 and confirmed that she followed the directions MARK E. PHILLIPS gave her in those e-mails. J.W. stated that she provided these e-mails, as well as the excerpts of bank records for Wallace-Black's Bank of America account (****2393), to lawyers for MOD.

j. J.W. stated that Wallace-Black never invoiced MOD or the Law Firm for any services provided or work completed, and never received any payment for such services or work. J.W. reviewed the invoices described above in Paragraph 7, and J.W. confirmed that she had never seen the invoices. J.W. further stated that she did not keep the MOD corporate funds transferred to her Wallace-Black Bank of America account (****2393), but transferred them to other accounts based on directions from MARK E. PHILLIPS.

k. J.W. saw MARK E. PHILLIPS wearing a Pink Gold Breguet watch and a Perpetual Calendar Breguet watch several times during 2008.

l. J.W. also stated that MARK E. PHILLIPS told her that he wanted to invest in Sampa Corporation.

m. During the time J.W. was romantically involved with MARK E. PHILLIPS she observed him ingest the following narcotics: LSD, cocaine, Vicodin, Oxycotin, hash, Ecstasy, Percocet, Adderall, Provigil, and marijuana, among others. J.W. also admitted that she had ingested cocaine on multiple occasions while with MARK E. PHILLIPS.

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 11

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

n.   J.W. also informed me that she was in possession of a 2007 Aston Martin DB9 that is registered to MARK E. PHILLIPS in Eugene, Oregon. According to sources online, a new 2007 Aston Martin DB9 retails for approximately $162,050.00-$183,250.00. MARK E. PHILLIPS has demanded that J.W. return this vehicle to him but she has refused to do so, and in fact, has hidden the vehicle to prevent MARK E. PHILLIPS from repossessing it.

o.   J.W. also stated that MARK E. PHILLIPS had assaulted her at the Peninsula Hotel, in Tokyo, Japan in December 2007. J.W. stated that she was treated by hotel personnel for her injuries and returned immediately to Seattle, Washington after suffering the injuries. J.W. stated that upon arrival in the United States, she was seen by a physician at Overlake Hospital in Bellevue, Washington in connection with the injuries inflicted by MARK E. PHILLIPS.

p.   J.W. further stated that MARK E. PHILLIPS had offered to pay C.L. if he had sex with J.W.'s daughter. (MOD's lawyers from Fenwick & West had previously provided me a February 25, 2010, statement signed by C.L., in which C.L. states that MARK E. PHILLIPS offered to pay C.L. $10,000.00 to have sex with J.W.'s eighteen-year old daughter.).

**ATTEMPT TO FRAUDULENTLY SEIZE MOD BANK ACCOUNT**

10.   I have learned the following from D.D., MOD's General Counsel:

a.   On March 27, 2009, following the DRC's interview of MARK E. PHILLIPS, MARK E. PHILLIPS resigned as CEO of MOD and from MOD's Board of Directors. Prior to March 27, 2009, MARK E. PHILLIPS was the majority shareholder in MOD, possessing 18,901,196 shares of MOD common stock. On March 27, 2009, MARK E. PHILLIPS entered into a Transition Agreement with MOD, whereby MARK E. PHILLIPS agreed to place all of his 18,901,196 shares of MOD common stock into a Voting Trust. The Voting Trust was created and is governed by the terms of the Voting Trust Agreement, entered into between MARK E. PHILLIPS and MOD. Under the terms of the Voting Trust Agreement, MARK E. PHILLIPS, among other things, relinquished

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 12

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

all voting rights to his 18,901,196 shares of MOD common stock and transferred such voting authority to the Voting Trust Trustee, K.C., a former MOD Board member. Thus, as a result of this agreement MARK E. PHILLIPS's ceased being the controlling majority shareholder in MOD. I have reviewed the Transition Agreement and Voting Trust Agreement and confirmed D.D.'s statements.

    b.  MOD has maintained a Wells Fargo bank account since approximately February 2009, through at least January 2010.

    11.  MOD's counsel at Fenwick & West also provided me with a series of e-mails written by R.C., a Vice President for Wells Fargo Commercial Banking, written to summarize MARK E. PHILLIPS's actions on December 15, 2009. I have spoken with R.C., and learned from him that R.C. did not personally talk to MARK E. PHILLIPS on December 15, 2009. R.C. told me that he spoke with the Wells Fargo bank employees K.S. (a Wells Fargo Loan Team Manager) and S.F. (a Wells Fargo Customer Service Manager) who did speak to MARK E. PHILLIPS on December 15, 2009, and that he created his e-mail summaries based on his conversations with K.S. and S.F. I have reviewed these e-mails. The e-mails explain that on the morning of December 15, 2009, MARK E. PHILLIPS, accompanied by two different individuals, at least one of whom was a lawyer at a large law firm, entered a Wells Fargo branch office in Seattle. MARK E. PHILLIPS presented to a Wells Fargo bank employee with the following documents: a December 15, 2009 Majority Consent of Shareholders for MOD, signed by MARK E. PHILLIPS ("Majority Consent"); an April 2, 2009 Stock Certificate, Number CS-013, showing MARK E. PHILLIPS as the owner of 18,901,196 shares of MOD common stock ("Stock Certificate CS-013"); and a December 15, 2009 Consent in Lieu of Special Meeting of the Board of Directors for MOD signed by MARK E. PHILLIPS ("Bank Consent"). I have reviewed each of these documents and summarize them below:

///
///
///

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 13

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1        a.    The December 15, 2009, Majority Consent states:

> The undersigned, being the holder of a majority of the outstanding shares entitled to vote at meetings of the shareholders of MOD Systems Incorporated, a Washington corporation (the 'Company'), by this instrument in lieu of a meeting of the Company, consents to the adoption of the following resolutions[.]

Among other things, the Majority Consent of Shareholders resolves: (1) to dismiss MOD's Board of Directors, and appoint five new individuals, including MARK E. PHILLIPS, to MOD's Board of Directors; (2) to appoint MARK E. PHILLIPS as temporary Chairman of the Board; (3) to terminate Fenwick & West LLP's representation of MOD; and that "[D.D.] will undergo an investigation of any proceeding in MOD between March 2009 and December 2009."

       b.    The Bank Consent purports to give MARK E. PHILLIPS control over MOD's bank accounts and activity, authorizing him to:

> execute such agreements and other documents, in the standard form provided by the Bank, as are necessary to open such accounts, including any standard form of banking resolutions, and that such officer is hereby authorized to sign checks or otherwise make withdrawals . . . as he deems appropriate from time to time.

       c.    The Stock Certificate CS-013 purports to certify that MARK E. PHILLIPS is the owner of 18,901,196 shares of MOD common stock. According to MOD corporate records, which MOD provided to me and which I have reviewed, the shares represented by Stock Certificate CS-013 were cancelled by MOD on or about April 2, 2009, pursuant to the Transition Agreement, and reissued by MOD on or about April 2, 2009, to K.C. as trustee of the Voting Trust.

   12.    I spoke to D.D. and MOD's counsel at Fenwick & West about these documents.

       a.    D.D. explained that based on these documents, Stock Certificate CS-013 that MARK E. PHILLIPS presented to Wells Fargo was false. Moreover, D.D. explained that the Majority Consent was also false because MARK E. PHILLIPS was not,

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 14

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

as of December 15, 2009, the holder of a majority of the outstanding shares entitled to vote at meeting of the shareholders of MOD. Per the Voting Trust Agreement and the Transition Agreement, all of MARK E. PHILLIPS shares were placed in the Voting Trust controlled by K.C. as trustee, and not MARK E. PHILLIPS.

      b.    Moreover, MOD's counsel at Fenwick & West provided me with a November 12, 2009 Order by King County Superior Court Judge John P. Erlick. Judge Erlick's order explains that MARK E. PHILLIPS sought to terminate the Voting Trust, and that upon careful consideration of that request, Judge Erlick denied that request.

      13.    According to R.C.'s e-mails, MARK E. PHILLIPS represented to Wells Fargo employees that, based on the documents he presented, MARK E. PHILLIPS was the controlling majority shareholder of MOD, that he had the authority to reconstitute the Board of Directors, and that he had been appointed as the temporary Chairman of MOD's Board of Directors. MARK E. PHILLIPS further represented that he had vested himself with authority to control MOD's bank accounts, in an attempt to gain authorization and access to MOD's bank accounts. Wells Fargo refused MARK E. PHILLIPS's request, but took the precautionary measure of freezing all of MOD's bank accounts and banking activity. Wells Fargo's precautionary measures temporarily froze MOD's pending payroll disbursements. Wells Fargo released the freeze shortly thereafter.

      14.    On or about March 26, 2010, MOD's counsel at Fenwick & West provided me with an e-mail dated March 26, 2010, in which MARK E. PHILLIPS attempts, once again, to seize control of MOD's bank accounts and banking privileges. In the e-mail to R.C., Vice President of Wells Fargo Commercial Banking, MARK E. PHILLIPS, using the e-mail account mark.phillips@gmail.com, wrote:

> I understand that you have been previously instructed by [A.B] and MOD's counsel to refuse access and take action against me for interference with the Bank Account. I am attaching clear cut information regarding the Shareholder Agreement with MOD and [A.B.'s] consulting agreement which clearly states that he has NO AUTHORITY without my express written consent to do anything on behalf of the company. Transition Agreement or Voting Trust or otherwise. You are hereby instructed to cease all communications with MOD

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 15

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

Systems, [D.D.], [A.B.] and Fenwick. Please contact your counsel, however You have no authority from me to take further instruction from MOD's current fraudulent management to access or use the funds for ANY PURPOSE including payroll. As you know they transfered the money to US Bank and SVB due to your refusal to participate in legal action against me. You are not to deliver any further information to MOD including any whistle blower material.

15. D.D. provided me with one additional e-mail, dated March 26, 2010, in which MARK E. PHILLIPS, using the e-mail account mark.phillips@gmail.com, wrote to current MOD CEO A.B. and others affiliated with MOD. In the e-mail to A.B., MARK E. PHILLIPS wrote:

> You have stolen from MOD, you have defrauded the company, its shareholders and destroyed its value; you are such a monumental fraud. . . You will be pursued and will be exposed. . . You will remove yourself from MOD, you will cease any communication with any party on behalf of MOD, and you will fuck yourself. You have aided money launders, and committed unimaginable crimes. . . . You have no idea how much shit you are in and you continue to be delusional about your power.
>
> I am done with playing this game. You never had authority in the DRC to take action, Mr. Smyth is aware of this from communications in January 2009. . . . You are so stupid its is unbelievable. You concealed Mr. Smyth's efforts to remove you too after your action in March and May, and concealed Ms. Devlin's complaints further exposing the fraud you were participating in. You continued to lie to the company, the shareholders and apparently yourself. Go away.

///

///

///

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 16

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

## CONCLUSION

16. The above facts are true and correct to the best of my knowledge and belief. Based on the above, I believe there is probable cause to believe that MARK E. PHILLIPS has committed acts in violation of Title 18, United States Code, Sections 1343 and 2 as alleged in this Complaint and Affidavit.

SPENCER WALKER
Special Agent
Federal Bureau of Investigation

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendants committed the offenses set forth in the Complaint.

Dated this _____29th_____ day of March, 2010.

JAMES P. DONOHUE
United States Magistrate Judge

COMPLAINT/MARK PHILLIPS
MJ No. _____ — 17

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970